UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GAYL PAYTON** | **CIVIL ACTION** |
| **VERSUS** | **NO:     10-1015** |
| **HARTFORD** | **UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY** |

### ORDER AND REASONS

Before the Court is a **Defendant's Motion for Summary Judgment (R. Doc. 20)** filed by the Defendant, Hartford Life and Accident Insurance (incorrectly named as Hartford)("Hartford") seeking the dismissal of the Plaintiff's, Gayl Payton, claims for disability benefits with all costs assessed against the Plaintiff.  No opposition has been filed.  This matter is before the undersigned United States Magistrate Judge upon consent of the parties pursuant to **Title 28 U.S.C. § 636(c)**.[1]

**I.    Background**

Payton filed the instant *in forma pauperis* action against the Defendant seeking a review of Hartford's denial of her Long Term Disability ("LTD") payments pursuant to the Employee Retirement Income Security Act ("ERISA").  Payton was a participant in a group LTD benefit plan sponsored by her former employer, DynCorp, in 1999 when she worked as a cook on a vessel.  The LTD was underwritten by Continental Casualty Company under Policy No. SR 83087049 ("LTD Policy") which was later acquired by Hartford.  Hartford is the underwriter and the administrator of the LTD Policy.

---

[1] R. Doc. 19.

In April of 1998, Payton fell at work after a refrigerator malfunctioned and leaked water onto the deck of the vessel on which she was working.  As a result of the fall, Payton sustained injuries to her neck.  Subsequently, Payton submitted a claim for disability benefits which was approved by Continental Casualty Company under the "Own Occupation" standard of LTD Policy.[2]  Payton's last day of work was May 27, 1999, and her employment was ultimately terminated on January 2, 2002. Payton received benefits from November 20, 1999, though November 19, 2001.

Subsequently, Payton made a claim for continuing disability benefits.  However, this request was denied under the "Any Occupation"[3] standard of disability contained in her policy.  Payton appealed the decision.  However, her appeal was denied and her termination became final on June 11, 2002.

In August 2009[4], Payton submitted an "Application for Short Term[5] Disability Income Benefits" which reflected the same date of disability as her prior submission.  Payton requested benefits for mental and physical disability and asserted that her last day of work, and the first day that

---

[2] According to the Policy, "Total Disability" means that, during the Elimination Period and the Insured Employee Occupation Period . . ., the Insured Employee, because of Injury or Sickness, is:
   (1) continuously unable to perform the substantial and material duties of <u>his regular occupation</u>;
   (2) under the regular care of a licensed physician other than himself; and
   (3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience."
(Admin. Record, Exh. C, 20052)(Emphasis added).

[3] According to the Policy, "After the Monthly Benefit has been payable for the Insured Employee Occupation Period . . ., "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:
   (1) continuously unable to engage in <u>any</u> occupation for which he is or becomes qualified by education, training or experience; and
   (2) under the regular care of a licensed physician other than himself."
(Admin. Record, Exh. C, 20052)(Emphasis added).

[4] Hartford contends that the application was submitted in September, 2009.  However, a review of the application demonstrates that the application was signed by Payton on August 2, 2009.  (Admin. Record., Exh. C., 200482-83.)

[5] The Court notes that although Payton's request form was for Short Term Disability, during an interview during the course of the investigation, Payton acknowledged that she did not have Short Term Disability Benefits under her policy and expressed her desire to be evaluated for LTD benefits.  (Admin. Record, Exh. C., 200070.)  Therefore, the claim was reviewed as a request for LTD benefits.

she was unable to work was in May 1999. She asserted that her condition was Post Traumatic Stress Disorder ("PTSD") which arose from sexual assault and sexual harassment in the workplace. (Admin. Record. Exh. C., 200481.)

Hartford requested that the Plaintiff provide a reason for the delay in her submission for her claim of long term disability benefits. On October 30, 2009, Payton responded and indicated that she had been refused disability from her past employer, Macy's[6], because it was noted that her ankle injury was pre-existing, and that she had injured her ankle when she was employed by DynCorp. (R. Doc. 1, p. 3.) She claims that she was informed that DynCorp was liable for her claims. Plaintiff further contended that she had been treated for depression and anxiety beginning on September 18, 1998, and that she was recently diagnosed with PTSD, which she claims was caused during her employment with DynCorp. She further included her medical records for the treatment of her neck, back pain, surgery, ankle pain, and treatment for depression and anxiety which arose from PTSD. (Admin. Record, Exh. C., 200112.)

On November 24, 2009, Hartford denied the Plaintiff's application because it found that her application was duplicative of her 1999 LTD benefits application and her new application related to the same date of disability as her original claim for LTD benefits. Hartford determined that she was not eligible for benefits and that no further review on her claim would be conducted. (Admin. Record, Exh. C, 20086.)

As to the instant motion, Hartford seeks a dismissal of the Plaintiff's claims for benefits. Hartford contends that the determination that Payton's claims were duplicative was not arbitrary and

---

[6]According to Payton's application for disability benefits, she was employed by Macy's from November 2006 through August 2007. While working for Macy's, she injured herself when she tripped over merchandise laying on the floor. (Admin. Record, Exh. C, 200445.) She made a request for disability coverage, which was denied by Macy's. According to Payton, Macy's denied the benefits because they found that her injury was pre-existing and related to her tenure with DynCorp.

capricious, and therefore was proper under applicable law. Alternatively, Hartford contends that if the Court finds that the application was not duplicative, Payton's claim for benefits is untimely and she is therefore barred from bringing the present action. Payton did not file an opposition.

## II. Standard of Review

### A. Motion for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled so summary judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The party seeking summary judgment is initially responsible for informing the Court of the basis for their motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322. The moving party need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.* at 322-23; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986.)

The Court, when assessing whether a dispute as to any material fact exists, considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but summary judgment may not be defeated with conclusory allegations or unsubstantiated assertions. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *Little*, 37 F.3d

at 1075.

### B.     Standard of Review Under ERISA

ERISA permits a claimant to file a lawsuit in federal district court when an administrator of an employee benefit has denied benefits to that claimant in order "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B); *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 394 (5th Cir. 1998); *see Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999)(en banc)("ERISA provides federal courts with jurisdiction to review determinations made by employee benefit plans.") An administrator of an employee benefit plan must make two determinations when considering whether to pay or deny benefits: "First, he must determine the facts underlying the claim for benefits . . . Second, he must determine whether those facts constitute a claim to be honored under the *terms* of the plan." *Schadler*, 147 F.3d at 394 (quoting *Pierre v. Conn. Gen. Life Ins. Co./Life Ins. Co. of N. Am.*, 932 F.2d 1552, 1557 (5th Cir. 1991)). Therefore, the Court must review two elements of the benefit determination, namely the (1) factual findings of the administrator; and (2) the administrators interpretation of the ERISA governed policy. *Green v. Prudential Ins. Co. of America*, No. 04-3101, 2005 WL 2036788, at * 5 (E.D. La. Aug. 5, 2005)(Fallon, J.).[7]

The factual determinations made by an administrator which underlie the decision to deny benefits are entitled to deference and are reviewed for an abuse of discretion. *Schadler*, 147 F.3d at

---

[7]The Fifth Circuit has described the applicable analytic methodology to ERISA claims as follows:

> In sum, ERISA and its regulations contemplate a system in which the administrator makes a decision as to whether to grant or deny benefits based on the factual scenario and based on its interpretation of the relevant plan provisions . . . . If the administrator denied benefits, the claimant may bring suit under § 1132. The district court will then engage in a deferential review of the administrator's factual determinations, based on the record before the administrator. Next, depending on whether the plan expressly grants the administrator discretion in interpreting its terms, the reviewing court will review the administrator's interpretation of the plan provisions either under a de novo or an abuse of discretion standard.

*Schadler*, 147 F.3d at 395.

395, 932 F.2d 1552, 1562 (5th Cir. 1991).  Further, "when assessing factual questions, the district court is constrained to the evidence before the plan administrator."[8]  Although there are some recognized exceptions to this general rule, the Fifth Circuit has also held that a court "is precluded from receiving evidence to resolve disputed material facts."  *Id.*

A plan administrator's "construction of the meaning of plan terms and plan benefit entitlement provisions is reviewed *de novo* unless there is an express grant of discretionary authority in that respect."  If there is an express grant of discretionary authority, the decision of the plan administrator is reviewed for abuse of discretion.  *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).

"Abuse of discretion is synonymous with arbitrary and capricious review in the ERISA context."  *Dramse v. Delta Family-Care Disability & Survivorship Plan*, 269 F. App'x 470, 478 (5th Cir. 2008)(citing *Lain v. UNUM Life Ins. Co.*, 279 F.3d 337, 342 (5th Cir. 2002)).  "A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'"  *Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 215 (5th Cir. 1999).  If the district court finds that the administrator's decision "is supported by substantial evidence and is not arbitrary and capricious, it must prevail."  *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 273 (5th Cir. 2005).  "Substantial evidence" is "'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.*  (quoting *Deters v. Sec. of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir. 1986).

Under Fifth Circuit precedent, a two-step methodology for testing a plan administrator's

---

[8]There are limited exceptions to this rule recognized by the Fifth Circuit.  "To date, those exceptions have been related to either interpreting the plan or explaining medical terms and procedures relating to the claim.  Thus, evidence related to how an administrator has interpreted terms of the plan in other instances is admissible." *Vega*, 188 F.3d at 299.

interpretation of a plan for abuse of discretion is employed. *Vercher*, 379 F.3d at 227. First, the court must determine the legally correct interpretation of the plan and "whether the administrator's interpretation accords with the proper legal interpretation." *Id.*[9] "If the administrator's interpretation is legally sound, then no abuse of discretion occurred and the inquiry ends." *Id.* If, however, the administrator did not interpret the plan in a legally correct manner, the court must then determine whether the administrator's interpretation constitutes an abuse of discretion. *Id.* at 227-28. To determine whether an abuse of discretion has occurred, the Fifth Circuit has identified four factors: (1) the plan's internal consistency under the administrator's interpretation, (2) any relevant regulations, (3) the factual background underlying the decision, and (4) any indication of lack of good faith. *Lain*, 279 F.3d at 346.

Where, as here, the plan administrator is also the insurer, an inherent conflict of interest results for the administrator. *Green*, 2005 WL 2036788, at * 6 (citing *Lain*, 279 F.3d at 343). When an administrator acts under a conflict of interest, the Court applies a "sliding scale" to the abuse of discretion standard. *Id.* (citing *Vega*, 188 F.3d at 297). "The existence of a conflict is a factor to be considered in determining whether the administrator abused its discretion in denying a claim. The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." *Vega*, 188 F.3d at 297. However, this review "need only assure that the administrator's decision fall somewhere on a continuum of reasonableness-even if on the low end." *Id.*

**III. Analysis**

    **A. Interpretation of the Policy**

---

[9]In order to determine the legally correct interpretation of the plan, a court must consider: (1) the uniformity of the plan administrator's interpretation; (2) whether that interpretation is consistent with a fair reading of the plan' and (3) any unanticipated cots resulting from different interpretations of the plan. *Id.* at 228.

### 1. **Benefit Determination by Hartford**

In its November 24, 2009, letter affirming the denial of benefits, Hartford determined that Payton's application for LTD benefits were duplicative of her previously submitted claim because both claims asserted that the date of disability was May 27, 2009. (Admin. Record, Exh. C. 200086.) On December 22, 2009, Hartford sent Payton a follow up letter in response to her telephone request of November 30, 2009. (Admin. Record Exh. C. 200073.)

The letter reiterated that Payton's claim was denied and outlined that her new claim, and the information submitted in support of that claim in September 2009, October 2009, and November 2009, related to the same disability claim that Payton had previously filed in 1999. The letter noted that Payton's last day of work with Dyncorp was May 24, 1999, and that Payton had filed for LTD on October 20, 1999. The benefits were approved under the Policy's 24 month own occupation period which ran from November 20, 1999, through November 19, 2001. The letter outlined that under the policy, "[a]fter 24 months benefits are only payable if you are unable to perform any occupation for which you are qualified based upon past education, training, or experience." *Id.* The letter further indicated that because the previous claim had been denied, and the subsequent appeal was denied, Payton had exhausted her remedies, and no other information submitted would be reviewed by the company. *Id.*

### 2. **Support for the Administrator's Decision**

Hartford contends that it did not act arbitrarily or capriciously in denying Payton's claims for benefits when it determined that her application was duplicative of her previous application submitted in 1999. In support, Hartford avers that Payton's 2009 application claims the same date of disability as her 1999 application for disability benefits. Secondly, Hartford claims that the medical records submitted by the Plaintiff in support of her claim indicate that she was treated by mental health

providers in 2000, 2001, 2002, 2005, and 2008.  Finally, Hartford contends that during their investigation of the claim, they interviewed Payton.  During this interview, Payton confirmed that she sought benefits for her previous injuries in addition to the PTSD claimed in the 2009 application.

Payton's application for benefits states that the last day that she worked before the disability was "5/1999."  The application further states that the first date that she was unable to work was "May 1999."  (Admin. Record, Exh. C., 200481.)  Payton's 1999 application similarly indicated that the first date that she was unable to work was May 1999.

Although the two applications provide at least the same month and year for the date of disability, the Court finds that this evidence is on the low end of reasonableness for a finding that the two claims are duplicative.  It is undisputed that Payton's 2009 application related to an injury which was sustained in April, 2008, and this injury related to a slip and fall.  Further, it is undisputed that Payton's 2009 claim for disability clearly states a mental injury related to sexual assault and sexual harassment, which is clearly unrelated to injuries resulting from a slip and fall.  As a result, given the inherent conflict of interest of Hartford in denying the Plaintiff's claim, the fact that the two applications reflect the same month and year of disability, without any other evidence, is not enough to surpass the arbitrary and capricious standard.

Further, although the medical records submitted by the Plaintiff with her application demonstrate that Payton did receive mental health treatment in 2001, 2002, 2005, and 2008, (*See, e.g.* Admin. Record, Exh. C., 200335-200338, 200347) the Court does not see how this evidence demonstrates that Payton's 2009 claim was duplicative of her 1999 claim.  Payton's initial claim was for physical injuries resulting from a slip and fall.  Although the medical health records frequently indicate that her mental health issues began during her employment with DynCorp, other health records make clear that the mental health issues related to the sexual assault and harassment she alleges

occurred during her employment and do not make mention of mental issues arising from Payton's slip and fall. Therefore, this evidence falls on the lower end of reasonableness and on its own, would not be enough to withstand the arbitrary and capricious standard.

However, the interview between Hartford and Payton certainly provides the Defendant with enough evidence to withstand the arbitrary and capricious standard. During the interview, Payton was asked why she was unable to work beginning on May 28, 1999. Payton indicated that it was due to Major Depressive Disorder ("MDD") and the pains from her neck injury. (Admin. Record, Exh. C., 20067.) She further indicated that the reason why she was unable to work at the time of the interview was because of the pain from her neck and the PTSD. *Id.* She indicated that she has had a change in her condition from her previous application because her neck pain is "really bad" and she has PTSD. *Id.* During the interview, she later said that the reason for her current claim was for both her neck and her MDD. She also indicated that she had appealed the previous denial of LTD benefits for her neck, but was not sure if she had also advised the company of her mental illness that was concurrent with her neck problem. (Admin. Record, Exh. C., 20068.)

Payton's own admission during the course of the investigation that her 2009 claim was related to both her neck pain and her mental injuries is enough evidence for Hartford to have made a determination that Payton's claim was at least partially duplicative of her prior claim for which she had already been paid benefits. It cannot be said that there was no "rational connection between the known facts and the decision or between the found facts and the evidence." *See Meditrust Fin. Servs. Corp.*, 168 F.3d. at 215. Although it is certainly not enough to show their claim was reasonable by a preponderance of evidence, it is certainly more than a scintilla of evidence and falls on the spectrum of reasonableness necessary to uphold a denial of benefits pursuant to ERISA. *See Ellis*, 394 F.3d at 273.

Furthermore, it is undisputed that Payton was paid under the Own Occupation provision of her policy for 24 months, from November 20 1999, through November 19, 2001. The policy does not provide coverage for any type of mental or emotional disorder beyond the twenty-four months.[10] (Admin. Record, Exh. A, 200554.) Therefore, it was reasonable for Hartford to determine that, to the extent that Payton had an emotional disability in addition to a physical disability arising from her previous claim for benefits, she had already been provided her benefits under the policy.

Given the combination of the evidence, Hartford's determination that the Plaintiff was not eligible for LTD benefits because her claim was duplicative of her 1999 claim was not unfair or unreasonable. The finding was based on evidence in the record that, although disputable, "clearly supports the basis for its denial." *Vega*, 188 F.3d at 299; *see also Green*, 2005 WL 2036788, at * 8. And the finding is rationally connected to the evidence in the record. *Lain*, 279 F.3d at 342; *see also Matney v. Hartford Life and Accident Ins. Co*, 172 Fed. Appx. 571, 573 (5th Cir. 2006)(unpublished). Accordingly, although the Court considers the financial conflict of Hartford as the administrator of the policy, this Court is bound to conclude that Hartford's decision as administrator has fallen "somewhere on the continuum of reasonableness" and was not an abuse of discretion. *see Vega*, 188 F.3d at 297.

Because the Court finds that Hartford's determination that Payton's claim for benefits arose from her prior employment with DynCorp in 1999 was not arbitrary and capricious, it need not determine whether the Plaintiff's request for benefits constituted a second, independent claim for disability benefits.

---

[10]According to the policy,
   This policy does not cover any loss caused by or resulting from:
      (1) declared or undeclared war or an act of either in the United States or Canada; or
      (2) Disability beyond 24 months after the Elimination Period if it is due to mental or emotional disorders of any type. Confinement in a hospital or institution licensed to provide care and treatment for mental or emotional disorders will not be counted as part of the 25-month limit.
(Admin. Record, Exh. A, 200554.)

11

**B.     Costs**

As for Hartford's request for costs, the request is granted.  The Defendant, as the prevailing party, is entitled to recover their costs.  Fed.R.Civ.P. 54(d)(1).  Pursuant to the Federal Rules, unless a federal statute, court order, or the Federal Rules of Civil Procedure state otherwise, costs, other than attorney's fees, "should be allowed to the prevailing party."  *Id.*  Under ERISA, "In any action under this subchapter . . . , the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  In the Fifth Circuit, the award of costs in the ERISA context is governed by the "prevailing party" test.  *See, e.g.*, *Lemon v. Liberty Life Assur. Co. of Boston*, 304 Fed. App'x. 273, 275 (5th Cir. 2008).

Although ERISA provides the undersigned discretion in awarding attorney's fees in an ERISA action[11], Hartford did not specifically request attorney's fees.  Therefore, the Court declines to exercise its discretion to award attorney's fees.  Accordingly,

**IV.   Conclusion**

**IT IS ORDERED** that Hartford Life and Accident Insurance's **Defendant's Motion for Summary Judgment (R. Doc. 20)** is hereby **GRANTED** and Gayl Payton's claims against the Defendant are **DISMISSED WITH PREJUDICE** and the Defendant's costs, other than attorney's fees, in these proceedings are assessed against the Plaintiff.

New Orleans, Louisiana, this 4th day of April 2011

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[11]The Court, however, in exercising its discretion, must consider the factors enumerated in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980) when determining whether attorney's fees are appropriate.  Under *Iron Workers*, the Court should consider: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions."  *Id.*